GUISEPPE MAURO et al., Plaintiffs, v JOSEPH McCRINDLE et al., Defendants.

JOSEPH McCRINDLE et al., Third-Party Plaintiffs-Respondents, v JOHN SCALA, Third-Party Defendant-Appellant, et al., Third-Party Defendants.

Second Department, August 20, 1979

### APPEARANCES OF COUNSEL

*Corcoran, Amabile & Cowin,* by *Weinstein Chayt & Bard, P. C. (Norman Bard, John Corcoran* and *Sandra Krevitsky* of counsel), for appellant.

*Harold M. Foster (Meyer, English, Cianciulli & Peirez, P. C. [Beth J. Goldmacher]* of counsel), for respondents.

### OPINION OF THE COURT

RABIN, J.

This appeal presents the unusual situation of a property owner who has been held vicariously liable to an injured plaintiff, seeking indemnification, not against the general contractor whose employee negligently caused the injuries, but, rather, against the employee directly. The employee, John Scala, appeals from the denial of his motion for summary judgment dismissing the third-party complaint for indemnification for failure to state a cause of action as against him as an individual (see CPLR 3211, subd [a], par 7; 3212). It

is essentially argued that there is no basis for indemnification because there is neither a special relationship between the employee and the property owner, nor an independent duty owed to the property owner by the employee. Although there do not appear to be any New York cases directly on point, a review of the fundamental principles of common-law indemnification requires the rejection of the appellant's contention and that we affirm.

As relevant to this appeal, the facts may be briefly stated. The individual third-party defendant, John Scala, is employed by the Scala Contracting Co., Inc. (Scala, Inc.), which corporation was engaged to demolish certain premises owned by Joseph McCrindle and managed by the Chauncey Real Estate Co., Ltd. (McCrindle, collectively). During the performance of the work, a protective sidewalk shed, erected by Scala, Inc., collapsed, causing personal injuries to one Guiseppe Mauro, an employee of Complete Conduit & Pipe Service Corp.

Mauro commenced a personal injury action against McCrindle and Scala, Inc. McCrindle brought a third-party action for indemnification and contribution against John Scala, the appellant, Complete Conduit & Pipe Service Corp., and the Brooklyn Union Gas Company, Conduit's contractee. During the course of the trial, Mauro entered into a settlement with Scala, Inc., for the sum of $300,000; the third-party action was severed from the main action, and subsequently, the trial court directed a verdict on the issue of liability in favor of Mauro against McCrindle. In so doing, the court emphasized that McCrindle's liability was entirely vicarious, resulting from the inherently dangerous nature of the work (i.e., demolition near a public thoroughfare) which was negligently performed by Scala, Inc. Upon submission to the jury, Mauro was awarded in excess of $1,000,000 in damages.

As here pertinent, the third-party complaint, although inartfully merging John Scala, the individual, with Scala, Inc.,* has sufficiently alleged that McCrindle has been held

---

* We note that although the third-party complaint alleges that "John Scala, and the defendant Scala Contracting Co., Inc. entered into a contract to furnish all the labor and material necessary for the demolition work", thereby establishing the very type of relationship which Scala argues is necessary for indemnification, Scala has apparently assumed for purposes of this appeal, that he, as an individual, was not a party to the contract with McCrindle. We have accepted that assumption and have not passed on the question of whether Scala was a party to the contract. However, if it is subsequently determined that he was a party to the contract, the existence of such a relationship may provide a basis for indemnification even in the absence of Scala's personal negligence.

vicariously liable for injuries sustained as a result of John Scala's personally negligent acts or omissions. For purposes of the motion to dismiss, and now on appeal, Scala has conceded that he, as an employee of Scala, Inc., was negligent, and inferentially, that such negligence was the proximate cause of Mauro's injuries. We are therefore presented with this abstract legal issue: may a property owner bypass his contractor and directly seek indemnification from the contractor's negligent employee.

There are two principal categories of indemnification: contractual, with which we are not now concerned, and quasi-contractual, which encompasses the fundamentals of indemnification between tort-feasors. The precepts of quasi-contractual indemnification have a long history in the common law and reflect an equitable abhorrence of unjust enrichment. An early New York statement of the common-law doctrine appears in *Oceanic Steam Nav. Co. v Compania Transatlantica Espanola* (134 NY 461, 467-468), wherein the court stated: "[O]ne who has been held legally liable for the personal neglect of another is entitled to indemnity from the latter, no matter whether contractual relations existed between them or not, and that the right to indemnity does not depend upon the fact that the defendant owed the plaintiff a special or particular legal duty not to be negligent. The right to indemnity stands upon the principle that every one is responsible for the consequences of his own negligence, and if another person has been compelled (by the judgment of a court having jurisdiction) to pay the damages which ought to have been paid by the wrongdoer, they may be recovered from him."

In *Dunn v Uvalde Asphalt Paving Co.* (175 NY 214, 217) common-law indemnification was described as: "[T]he rule of law under which a person guilty of negligence is charged with the responsibility for his wrongful act, not only directly to the person injured, but indirectly to a person who is legally liable therefor. In the latter case the wrongdoer stands in the relation of indemnitor to the person who has been held legally liable, and the right to indemnity rests upon the principle that every one is responsible for the consequences of his own wrong, and if another person has been compelled to pay the damages which the wrongdoer should have paid the latter becomes liable to the former. *(Village of Port Jervis v. First Nat. Bank,* 96 N. Y. 550; *Oceanic S.N. Co. v. Compania T.E.,* 134 N. Y. 461.)"

The thrust of the above statements is the simple principle that "everyone is responsible for the consequences of his own acts and this responsibility extends not only to the person directly injured, but also to one indirectly harmed by being cast in damages by operation of law for the negligent act" (1B Warren's NY Negligence, ch 10, § 2.01, p 641). As between tort-feasors, the one whose negligent act or omission directly resulted in the injuries is primarily liable and the one who is liable to the third person in the first instance, by operation of law, is secondarily liable (see *Kelly v Diesel Constr. Div. of Carl A. Morse, Inc.,* 35 NY2d 1, 7).

In none of the above enunciations of the doctrine of implied indemnification, is there any suggestion that the right to indemnification is conditioned upon the existence of a duty or relationship between the indemnitor and the indemnitee. Nor may such an absolute prerequisite be found in the Restatement of Restitution where the general rule of indemnification is simply that:

"§ 76. GENERAL RULE

"A person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other, unless the payor is barred by the wrongful nature of his conduct."

Similarly, the section on indemnification between tort-feasors, appearing in the Restatement of Torts 2d (§ 886B) indicates that indemnification is proper whenever the indemnitor would be unjustly enriched by the discharge of a joint liability by the indemnitee, and no express reference is made to any requirement of a special relationship or independent duty owed as between the two parties.

The concept of implied indemnification is founded in the dual principles that the actual or primary tort-feasor should be liable for the consequences of his acts, and that causing a secondarily liable tort-feasor to bear the burden of paying damages would result in unjust enrichment to the primary tort-feasor. However, the law of indemnification also serves to reconcile two other legal principles: liability for fault and liability without fault (i.e., absolute or vicarious liability).

Traditionally, the fundamental basis of tort law is that persons should be liable for their wrongful or negligent acts. An individual who by intentional or negligent misconduct

causes an injury, is at fault and is liable therefor. However, the law has also recognized that in many instances, the tort-feasor who is at fault may be unable to recompense the victim for the injuries that he has caused. Therefore, as a means of social insurance, in certain situations liability has been imposed irrespective of fault (i.e., absolute liability) thereby removing the potential burden of loss from the innocent victim and placing it upon another, largely innocent, party who is in a better position to spread the risk upon society as a whole (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U of Pa L Rev 130, 147-148). In a classical nomenclature, the tort-feasor at fault is the primary tort-feasor or indemnitor, and the absolutely liable "innocent" party is the secondary tort-feasor or indemnitee.

The shifting of the burden of loss from the innocent victim to the comparatively innocent third party is done both by statute and by common law. Regardless of the source, there must be a rational basis for making this third party liable in the first instance to the victim, when such third party would not otherwise be liable under classical tort law formulations of liability based on fault. It is here that the law requires a special relationship or independent duty, for without these relationships, there would be no first instance absolute liability as against the "innocent" party.

Classic examples of absolute liability allowing first instance recovery by a victim against a party not directly at fault, are the relationships of owner and contractor, and master and servant. Thus, when an employee commits a negligent act or omission which results in an injury, the doctrine of *respondeat superior* imposes absolute liability upon the employer, thereby insuring that the injured party will have a tangible right to recovery. Absent the employer-employee relationship, there would be no rational basis for the doctrine of *respondeat superior* and consequently the innocent victim would be reduced to the frequently impossible task of seeking recovery from a judgment proof employee (cf. *Riviello v Waldron,* 47 NY2d 297). Therefore, the law allows the innocent victim to proceed directly against both the master and the servant, or against the master alone without joining the employee whose misconduct caused the injury. As to the victim, both the master and servant are primarily liable. But as between the vicariously liable master and the actually liable servant, the imposition of absolute liability creates an extremely harsh

result which is antithetical to traditional formulations of liability based on fault. It is here that indemnification reconciles the tension between the underlying doctrines of no-fault liability and fault liability. "One whom the law holds to an absolute liability for the wrongful act of another has been injured just as really, even though indirectly, by that wrongful act as though his property had been struck by the other's automobile in the first place. Even though we may properly refer to the right to indemnity in such circumstances as a quasi contractual right based upon unjust enrichment, it is actually supported by simple, fundamental tort law principles just as clearly as is the right to recover for injuries caused directly by the tortious act. Such indemnity is an imposition of liability for fault, and as such is designed to minimize the harshness of previously imposed liability without fault." (Leflar, Contribution and Indemnity Between Tortfeasors, 81 U of Pa L Rev 130, 148.)

The theory of McCrindle's action is that he has been held vicariously liable for the injuries caused by John Scala's actual misconduct. It is this essential factor of vicarious liability that is the cornerstone of indemnity. It makes no difference whether the imputation of liability results from some special relationship (e.g., master-servant) or from some independent duty resulting from the indemnitee's special position. It matters only that as between the two tort-feasors, the indemnitee is secondarily liable to the indemnitor and that the indemnitee has discharged a liability to the victim of the indemnitor's tortious conduct. Thus, the right of indemnity exists independently of any special relationship or duty and rests instead on the parties' relative responsibility as determined on the facts as a whole (cf. *Dole v Dow Chem. Co.,* 30 NY2d 143, 153). From this perspective, the existence of a special relationship is but one factor to consider in determining the relative primary and secondary status among tort-feasors.

In the present case, the essential elements of a right to indemnification have been sufficiently pleaded. Although McCrindle was not personally negligent, absolute liability has been imposed upon him because he engaged in an inherently dangerous activity for his own benefit, and because he is in a better position to bear the burden of liability than is the innocent victim of the underlying activities. However, as between McCrindle and John Scala, it appears that Mc-

Crindle's vicarious liability is wholly secondary. It was allegedly Scala's violation of a duty of care which directly caused the injuries and which cast McCrindle into liability. Thus, as between themselves, Scala as the alleged actual tortfeasor, may be deemed to have violated a duty to Mauro (causing physical injuries) and to McCrindle (causing pecuniary loss), even in the absence of a direct contractual relationship. We therefore, perceive no compelling or reasonable basis to preclude a direct action for indemnification by the vicariously liable owner, McCrindle, against the alleged primarily negligent employee, Scala.

It has been suggested that this result significantly increases the risk of exposure to individuals and is inconsistent with principles of absolute liability. We disagree. Although persuasive arguments may be made for always shifting responsibility for one's misconduct to those who can better bear the cost, New York has not accepted such principles. Instead, the imputation of absolute liability, insofar as it exists, continues to be a doctrine intended to benefit the innocent victim, rather than a mechanism for releasing the primary tort-feasor from culpability. As to potentially increasing the exposure of individuals, we note that the victim could always sue such persons, and that there was always a right to indemnfication by some secondarily liable tort-feasor. Indeed, Scala concedes that McCrindle could seek indemnification from Scala, Inc., and that Scala, Inc., could seek indemnification from him. Our decision merely eliminates a step in the indemnity cycle, thereby achieving directly what Scala concedes could have been achieved through indirection. Furthermore, the extent of exposure is the same because there cannot be a double payment, and it is unlikely that the instances of indemnfication being sought from the individual employee will be significantly increased.

As a final caveat, it is emphasized that McCrindle will be entitled to indemnification from John Scala only to the extent that Scala personally committed a negligent act or omission which was a proximate cause of Mauro's injury. More simply, McCrindle's right to indemnification is dependent upon the factual showing that John Scala, as an individual employee of Scala, Inc., was primarily liable. (But see footnote on page 79.)

O'CONNOR, J. P., MARTUSCELLO and MANGANO, JJ., concur; SHAPIRO, J., not voting.

Order of the Supreme Court, Kings County dated January 2, 1979, affirmed insofar as appealed from with $50 costs and disbursements.