Vincent **RAMIREZ, Jr.,** an infant by his father and natural guardian, **Harry RAMIREZ,** and **Harry Ramirez,** individually, **Plaintiffs,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION,** National Railroad Passenger Corporation, d/b/a Amtrak, and Pennsylvania Tunnel and Terminal Company, **Defendants.**

No. 82 Civ. 1376 (CBM).

United States District Court, S.D. New York.

July 28, 1983.

---

Wilson, Elser, Edelman & Dicker by Harry P. Brett, New York City, for defendant National Railroad Passenger Corp.

Conboy, Hewitt, O'Brien & Boardman by Henry W. Herbert, New York City, for defendant Pennsylvania Tunnel and Terminal Co.

## OPINION

MOTLEY, Chief Judge.

This action was commenced in New York state court. In the original state complaint, plaintiffs alleged that the infant plaintiff, Vincent Ramirez, Jr., was injured when he came in contact with a power line in a rail yard owned by defendant National Railroad Passenger Corporation (NRPC). The rail yard, known as the "Sunnyside" yard, is located in the borough of Queens, in the city of New York. The complaint alleged that the infant plaintiff gained access to the Sunnyside yard through a fence that was owned by NRPC.

NRPC removed the action to this court on diversity grounds, and commenced a third-party action against defendant Pennsylvania Tunnel and Terminal Co. (PT & TC), alleging that the infant plaintiff "actually entered the railroad yard through a fence and a piece of property" owned by PT & TC, which fence had been negligently maintained by PT & TC.[1] NRPC sought "contribution and/or indemnification" from PT & TC.[2] PT & TC denied the allegations of the third-party complaint.[3]

Plaintiffs then filed an amended complaint, naming both NRPC and PT & TC as defendants, alleging, *inter alia*, that both defendants had a duty with respect to the fence through which the infant plaintiff gained access to the railroad yard.[4]

---

1. Third-Party Complaint at ¶ 9.

2. *Id.* at ¶ 12.

3. Answer to Third-Party Complaint.

4. *See* Amended Complaint at ¶¶ 26 and 27.

NRPC's third-party action was discontinued without prejudice by stipulation. Shortly thereafter, PT & TC answered the amended complaint, and in its answer asserted a cross-claim against NRPC for indemnification, or, in the alternative, apportionment and contribution. In the cross-claim, PT & TC asserted that its negligence, if any, was "secondary and passive," while that of NRPC was "primary and active."[5]

The action was settled as between both defendants and plaintiffs on or about March 31, 1983. Plaintiffs settled with NRPC for the sum of $35,000, and with PT & TC for the sum of $11,000.

The case came before the court on cross-motions for summary judgment directed to PT & TC's cross-claim. By order dated June 30, 1983, the court granted NRPC's motion for summary judgment in its favor on the cross-claim, and denied PT & TC's cross-motion for summary judgment. The reasons for the court's decision are set forth below.

## DISCUSSION

PT & TC conceded that, by virtue of its settlement of the claims against it, its action for contribution or apportionment was barred by N.Y.G.O.L. § 15–108(c).[6] PT & TC could still, however, pursue a common-law action for indemnity. *See McDermott v. City of New York*, 50 N.Y.2d 211, 220, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980). The parties did not dispute the applicability of New York law to the claims before the court.

There was initially some confusion as to the location of the fence through which the infant plaintiff gained access to the Sunnyside yard. It appears that the Sunnyside yard adjoins property owned by PT & TC, and that there is no fence separating the Sunnyside yard from the property of PT & TC. In the original complaint, plaintiffs alleged that the infant plaintiff gained access to the Sunnyside yard through a fence owned by NRPC, located near 43rd Street and Barnett Place.[7] Through discovery, it was allegedly ascertained that the fence through which the infant plaintiff passed was located at 43rd Street and 37th Avenue, on property belonging to PT & TC, and that the fence belonged to PT & TC.[8] These facts were alleged in NRPC's third-party complaint. In plaintiffs' amended complaint, it was alleged that *both* defendants owned, operated and controlled the fence *and* railroad yard in question. The parties ultimately agreed, however, that PT & TC owned the fence through which the infant plaintiff gained access to the NRPC property upon which he was allegedly injured.[9]

On the cross-claim, PT & TC's contention was that, notwithstanding its admitted ownership of the fence, *NRPC* should ultimately be held liable for any sums paid to plaintiffs by PT & TC, because, as between PT & TC and NRPC, NRPC had the duty to maintain the fence. This duty, according to PT & TC, had been "assumed" by NRPC and the "assumption" was evidenced by a course of conduct of NRPC. *See* Affidavit of Henry W. Herbert in support of PT & TC's cross-motion for summary judgment at 3. PT & TC characterized this allegedly

---

5. Answer of PT & TC to Amended Complaint at ¶ 14.

6. The statute provides, in pertinent part, that "[a] tortfeasor who has obtained his own release from liability shall not be entitled to contribution from any other person." N.Y.G.O.L. § 15–108(c) (McKinney 1978).

7. *See* Verified Complaint, appended to Third-Party Complaint as Exhibit A.

8. *See* Third-Party Complaint at ¶ 9; Affidavit of Harry P. Brett in Support of [NRPC's] Motion for Summary Judgment at ¶ 3.

9. Consent Pre-Trial Order at ¶ 5. A court order reciting "the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel ... controls the subsequent course of the action ...." Fed.R.Civ.P. 16. *See also* Consent Pre-Trial Order at ¶¶ 6(3) and 7(b)(8); and PT & TC's Statement Pursuant to General Rule 9(g) [sic] (Rule 9(g) Statement) at ¶ 3.

"assumed" duty as a "primary" duty to maintain and repair the fence. *Id.* at 4.

Until recently, the law of New York State held that a tortfeasor who was sued by a plaintiff could not seek contribution from a joint tortfeasor who had not been named as a party defendant. In practical application, however, courts "abandon[ed] the rigorous common-law policy," developing an "'active-passive' negligence concept." *Dole v. Dow*, 30 N.Y.2d 143, 148, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972). The tortfeasor who was named as a defendant could seek to shift the entire burden of responsibility to the joint tortfeasor by means of an action over for indemnity. *Id.* The process "became a measure of degree of differential culpability .... The 'passive' negligent act was treated ... as less a wrong than the 'active' negligent act." *Id.*

In *Dole v. Dow*, the New York Court of Appeals criticized the use of the terms "active" and "passive" negligence in the context of indemnity, noting that, under that analytical construct, "there could be indemnity where a party 'was less culpable than the principal wrongdoer, although both [were] equally liable to the person injured' ...." 30 N.Y.2d at 150, 282 N.E.2d 288, 331 N.Y.S.2d 382. The court undertook to "re-examine" the doctrine of indemnity, and held that, where each party is in part responsible for the negligence for which one has been held liable in damages, the "prime defendant" may recover for that *part* of the negligence attributable to the other. *Id.* at 148–49, 282 N.E.2d 288, 331 N.Y.S.2d 382. In other words, the court recognized a "[r]ight to apportionment ... rest[ing] on relative responsibility." *Id.* at 153, 282 N.E.2d 288, 331 N.Y.S.2d 382. The effect of the *Dole* decision was to narrow the availability of the common-law remedy of indemnity to situations in which the tortfeasor seeking such relief is liable only vicariously, or by operation of law. *See Tokio Marine & Fire Insurance Co., Ltd. v. McDonnell Douglas Corp.*, 465 F.Supp. 790, 796 (S.D.N.Y.1978), *aff'd*, 617 F.2d 936 (2d Cir.1980).

Since the decision in *Dole v. Dow*, the courts of New York State have employed the terms "primary" and "secondary" in examining claims for indemnity. Thus, one who is in the "first instance" liable to a plaintiff for breach of a nondelegable duty is "secondarily" liable, because the duty *"could not be delegated as against persons injured by the breach of the duty."* *Kelly v. Diesel Construction*, 35 N.Y.2d 1, 7, 315 N.E.2d 751, 358 N.Y.S.2d 685 (1974) (emphasis added). If the party who must pay in the first instance has, however, *in fact* delegated the duty to another, he is only "vicariously liable" to the injured plaintiff, and may seek indemnity from the actual tortfeasor, who is "primarily" liable. 35 N.Y.2d at 7, 315 N.E.2d 751, 358 N.Y.S.2d 685. *See also Rogers v. Dorchester Associates*, 32 N.Y.2d 553, 564–65, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973).

In the instant case, PT & TC admitted that there was no contract providing for indemnity between it and NRPC.[10] PT & TC argued, however, that it was only vicariously, or "secondarily," liable to plaintiffs and that it was therefore entitled to indemnification by NRPC. PT & TC's argument implicitly acknowledged that PT & TC, as owner of the fence, had a nondelegable duty to maintain the fence, i.e., that there was a legal basis for PT & TC's liability to plaintiffs.[11] As the court has already noted, it is clear that one who in the first instance has a nondelegable duty and is therefore absolutely liable for breach of that duty may delegate the re-

---

10. Rule 9(g) Statement at ¶ 14.

11. A tortfeasor who has settled with the plaintiff may pursue an action for indemnity. The would-be indemnitee must, however, have been liable to the plaintiff under some theory. "[I]ndemnity will not be granted to a 'volunteer.' ... It is not open to the indemnity plaintiff to argue that he was in no way liable to the tort plaintiff." *Tokio Marine & Fire Ins. Co., Ltd.*, 465 F.Supp. 790, 794 (S.D.N.Y.1978), *aff'd*, 617 F.2d 936 (2d Cir.1980). *See also Martinez v. Fiore*, 90 A.D.2d 483 (Case 10), 454 N.Y.S.2d 475 (2d Dep't 1982) ("a party seeking indemnity must be held liable to the plaintiff before he can recover over from a third party").

sponsibility for performance of the duty to another, and recover under a theory of implied indemnity from the party to whom the duty was in fact delegated. The facts asserted by PT & TC, however, did not substantiate its claim of delegation nor, *a fortiori*, its claim that it was only vicariously liable as a result of NRPC's negligence.

According to PT & TC, NRPC's Supervisor of Buildings and Bridges admitted in the course of a deposition that his department had maintained the fence in question, and had placed signs and "chicken wire patching" thereon.[12] PT & TC further asserted that NRPC's security personnel patrolled the area around the fence, and reported any holes that they observed in the fence to NRPC's maintenance department.[13] Significantly, PT & TC went on to state that:

> [p]rior to [the infant] plaintiff's accident, *PT & T[C] had nothing to do with the maintenance of the fence ... and none of its employees ever worked on that fence for any reason either prior or subsequent to [the infant] plaintiff's accident.* PT & T[C] did not know of the existence of any holes in that fence as of [the date of the accident] nor did PT & T[C] have knowledge that children were trespassing upon said premises. PT & T[C] was unaware of any prior accidents on either its land or upon NRPC's abutting property.[14]

PT & TC did not allege that it entered into any agreement with NRPC whereby NRPC undertook to maintain the fence. It would appear from PT & TC's evidence that PT & TC had no knowledge of any actions taken to maintain the fence by NRPC prior to discovery conducted in connection with this action. Indeed, even taking all of PT & TC's allegations as true and drawing all inferences in favor of PT & TC, it would appear that PT & TC was completely derelict in its duty to maintain its own fence. Having discovered that NRPC made efforts to remedy the situation caused by PT & TC's failure to maintain its fence, PT & TC sought to shift the entire responsibility for lapses in maintenance to NRPC, notwithstanding the absence of an agreement for such maintenance between the parties.

The court has found no case in which indemnity has been held proper in such a situation. To maintain a cause of action for indemnity, the party seeking indemnity must show that the proposed indemnitor owed it a duty to perform the act in question. Absent a duty between the tortfeasors independent of the plaintiff's cause of action, there can be no claim for indemnity. PT & TC's claim for indemnity fails because PT & TC has not shown that NRPC had any duty to PT & TC to maintain the fence. In other words, there has been no showing that PT & TC actually delegated its admitted duty to maintain its own fence to NRPC, thus absolving PT & TC of ultimate liability for negligent maintenance.

> The right to indemnity is predicated either on a duty assumed expressly by contract ..., or on the quasi-contract theory of unjust enrichment ... [T]he indemnity cross claim shifts the duty to pay in full from one joint tort-feasor to another, from the one called upon to pay to the one who ought to pay because as between them he has a duty to do so .... If there is no duty *as between the two* to prevent injury to the injured victim, there can be no right of indemnity by one from the other.

*Smith v. Hooker Chemical and Plastics Corp.*, 83 A.D.2d 199, 200–01, 443 N.Y.S.2d 922, 924 (4th Dep't 1981) (citations omitted) (emphasis added). As the *Smith* court noted, the right to indemnity

> is not derivative in the sense that the third-party plaintiff sues the third-party defendant for damages sustained by the injured party as a result of the accident.... In the indemnity claim, the third-party plaintiff shifts the ultimate

---

12. Rule 9(g) Statement at ¶ 15.

13. *Id.*

14. *Id.* at ¶ 16 (emphasis added).

burden of his own responsibility to the prime plaintiff to the third-party defendant *who owed [the third-party plaintiff] a duty to prevent the accident* and— thus also to prevent the liability he incurred to the prime plaintiff.

*Id.* (citations omitted) (emphasis added). *See also Tipaldi v. Riverside Memorial Chapel, Inc.,* 273 App.Div. 414, 419, 78 N.Y.S.2d 12, 18 (1st Dep't), *aff'd,* 298 N.Y. 686, 82 N.E.2d 585 (1948), *quoting Phoenix Bridge Co. v. Creem,* 102 A.D. 354, 356, 92 N.Y.S. 855, 856 (2d Dep't 1905), *aff'd,* 185 N.Y. 580, 78 N.E. 1110 (1906) ("[W]hile both the plaintiff [in action over for indemnity] and the defendants were equally culpable and equally liable to the ... public for the omission of duty which resulted in the injury, yet *as between themselves* the plaintiff was entitled to rely upon the defendants to discharge the duty because of their contractual relations ...." (emphasis in original)); *Swanson v. 97 Fifth Avenue Corp.,* 141 N.Y.S.2d 125, 127 (Sup.Ct. 1955), *aff'd,* 1 A.D.2d 768, 149 N.Y.S.2d 208 (1st Dep't 1956) (owner of property may seek indemnification from independent contractor for non-performance of contractual duty independently owing to owner).

None of the cases cited by PT & TC would support the finding of a valid claim for indemnity on the facts alleged by PT & TC. In *McDermott v. City of New York,* 50 N.Y.2d 211, 216, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980), the defendant city was sued by a sanitation worker whose arm had been severed by the hopper mechanism of a garbage truck. The city was permitted to pursue a third-party action for indemnification against the manufacturer of the truck, which action was based on "a duty imposed by the law of products liability." 50 N.Y.2d at 219, 406 N.E.2d 460, 428 N.Y.S.2d 643. The general contractor's claim for indemnification in *Kelly v. Diesel Construction,* 35 N.Y.2d 1, 315 N.E.2d 751, 358 N.Y.S.2d 685 (1974) was predicated upon a subcontract whereunder the subcontractor was to supply and maintain an elevator for

the use of construction personnel. Similarly, in *Rogers v. Dorchester Associates,* 32 N.Y.2d 553, 300 N.E.2d 403, 347 N.Y.S.2d 22 (1973), the owner and manager of a building were granted judgment on a cross-claim against an elevator company which had, by "written agreement with [the manager], ... undert[aken] to 'regularly and systematically examine, adjust [and] lubricate' elevator machinery, to 'repair or replace' parts if required in [the elevator company's] judgment, and to 'use all reasonable care to maintain the elevator equipment in proper and safe operating condition.'" 32 N.Y.2d at 558, 300 N.E.2d 403, 347 N.Y.S.2d 22.

PT & TC also cited *Mauro v. McCrindle,* 70 A.D.2d 77, 419 N.Y.S.2d 710 (2d Dep't 1979), *aff'd,* 52 N.Y.2d 719, 417 N.E.2d 567, 436 N.Y.S.2d 273 (1980). In that case, an owner sought indemnification from an employee of a general contractor that had been engaged to demolish a building. The employee had erected a "protective sidewalk shed," which shed collapsed, injuring plaintiff. The employee conceded his negligence for purposes of the appeal. 70 A.D.2d at 79–80, 419 N.Y.S.2d 710.

PT & TC relied on language in the *Mauro* opinion indicating that "the right of indemnity exists independently [of] any special relationship or duty and rests instead on the parties' relative responsibility as determined on the facts as a whole,"[15] arguing that "nothing short of simple fairness entitles PT & T[C] to full indemnity from the primary tortfeasor, NRPC."[16] The *Mauro* opinion does not, however, support the existence of a valid claim for indemnity in the absence of secondary liability predicated on a duty or relationship imposing liability on one tortfeasor for the acts of the other. *Cf.* 70 A.D.2d at 82–83, 419 N.Y.S.2d 710.

The issue addressed by the *Mauro* court was whether "a property owner [may] *bypass his contractor* and directly seek indemnification from the contractor's negli-

---

**15.** 70 A.D.2d at 83, 419 N.Y.S.2d 710.

**16.** Memorandum of Law of PT & TC in support of motion at 8.

gent employee." 70 A.D.2d at 80, 419 N.Y. S.2d 710 (emphasis added). The trial court had found that the owner's liability was "entirely vicarious, resulting from the inherently dangerous nature of the work ... *which was negligently performed by [the general contractor]*." 70 A.D.2d at 79, 419 N.Y.S.2d 710 (emphasis added).

Both the parties and the court recognized that, under settled law, the owner would have a valid action for indemnity against the contractor, based on their contractual agreement, and that the contractor could in turn seek indemnity from its employee, by virtue of the master-servant relationship. *See* 70 A.D.2d at 84, 419 N.Y.S.2d 710. The unusual aspect of the case was the absence of a contractual duty or "special relationship" running directly between the owner and the contractor's employee. The court found, however, that the employee did have a duty of care as to the owner, and recognized that its decision to permit the action for indemnity against the employee "merely eliminate[d] a step in the indemnity cycle, thereby achieving directly what ... could have been achieved through indirection." *Id.*

Thus, the *Mauro* decision does not disturb the well-settled precondition for an action over for indemnity—that there be a duty as between the indemnitor and indemnitee independent of the plaintiff's cause of action for injury. This is simply the reverse side of vicarious liability—absent some sort of relationship, or duty as between the joint tortfeasors, there would be no vicarious liability imposed on one for the acts of the other. *Cf.*, 70 A.D.2d at 82, 419 N.Y. S.2d 710.

Here, plaintiffs alleged that PT & TC was negligent in the maintenance of its fence, and that PT & TC's negligence contributed to plaintiffs' injuries. It is clear that, even on the facts alleged by PT & TC, PT & TC *alone* had a duty to maintain the fence, which duty was not fulfilled by PT & TC. PT & TC had no agreement with NRPC whereby NRPC undertook to fulfill PT & TC's acknowledged duty; PT & TC had no right to rely on NRPC to fulfill PT

& TC's duty of maintenance; and, indeed, PT & TC's own evidence indicated that there could have been no reliance, since PT & TC was apparently unaware of any actions taken by NRPC with respect to maintenance of the fence. This is not a situation in which a landowner has been held liable for injuries resulting from a dangerous condition created by another on the owner's land. Rather, the danger in this case was created by PT & TC's own negligence in failing to perform its duty to maintain its property. NRPC, according to the evidence offered by PT & TC, merely failed to remedy completely the danger created by PT & TC's negligence. No action for indemnity lies as between PT & TC and NRPC.

The court, construing all of PT & TC's allegations as true, and taking all inferences in the light most favorable to PT & TC, found that NRPC was entitled to summary judgment in its favor on the cross-claim as a matter of law. There was no disputed issue of material fact.

NRPC's motion for summary judgment on the cross-claim was therefore granted. PT & TC's motion for summary judgment was denied.