**In the Matter of POLING TRANSPOR-TATION CORP., for Exoneration from or Limitation of Liability.**

**No. 87 Civ. 8505 (RWS).**

United States District Court,
S.D. New York.

Jan. 9, 1992.
As Amended March 11, 1992.

Connell Losquadro & Zerbo, New York City, for plaintiff Poling Transp. Corp.; William F. Losquadro and Donna Marie Zerbo, of counsel.

Bower & Gardner, New York City, for claimants Long Island R. Co. and Metropolitan Transp. Authority; Patrick J. Kenny, of counsel.

Jacob D. Fuchsberg Law Firm, New York City, for claimants Antonio Coca and Sylvia Coca; James M. Lane, of counsel.

Stanley P. Danzig, New York City, for claimant David Theophilous.

## OPINION

SWEET, District Judge.

A motion has been made to dismiss the claim of the Long Island Railroad and the Metropolitan Transportation Authority (the "LIRR/MTA") against plaintiff Poling Transportation Corp. and the Motor Vessel Poling Bros. No. 7 (collectively, "Poling") for indemnification and its cross-claims for indemnification against claimants David Theophilous ("Theophilous"), Antonio Coca ("Coca") (together with Sylvia Coca, the "Individual Claimants"), and the group of claimants referred to in prior opinions of this court as the "Ditmas Group" or the "Porcelli Corporations." This motion arises in the context of a morning-of-trial settlement in principle (the "Settlement") between the Individual Claimants and Poling, the Individual Claimants and the Ditmas Group, and the Ditmas Group and Poling.

The parties and facts involved in this case have been discussed in prior opinions of this court, familiarity with which is assumed. *See In re Complaint of Poling Transp. Corp.*, 782 F.Supp. 20 (S.D.N.Y. 1991); *In re Complaint of Poling Transp. Corp.*, 776 F.Supp. 779 (S.D.N.Y. 1991); *In re Complaint of Poling Transp. Corp.*, No. 87 Civ. 8505 (RWS), slip op., 1991 WL 113769 (S.D.N.Y. June 17, 1991); *In re Complaint of Poling Transp. Corp.*, 764 F.Supp. 857 (S.D.N.Y.1991).

In its claim and amended answer in this proceeding, the LIRR/MTA asserted its claim and cross-claims for contribution and/or indemnification. Assuming for purposes of this opinion that the Settlement has taken place, the LIRR/MTA no longer may pursue its contribution claims against any of the settling tortfeasors. Subsections (b) and (c) of New York General Obligations Law § 15–108 (McKinney's 1992) ("G.O.L. § 15–108") provide that when one of two or more joint tortfeasors obtains a release (i.e., settles with the plaintiff), he may neither be held liable for contribution to nor may he seek contribution from the other joint tortfeasors.

G.O.L. § 15–108 does not operate, however, to bar indemnification claims by or against settling tortfeasors. *See Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 24–25, 494 N.Y.S.2d 851, 853, 484 N.E.2d 1354, 1356 (1985); *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); Practice Commentary to G.O.L. § 15–108, at 702 (McKinney's 1989 vol.). To determine whether the LIRR/MTA continues to have a claim against Poling, Theophilous, Coca and the Ditmas Group, therefore, it is necessary to determine whether it may properly assert a basis for indemnity against any or all of these parties.

The New York Court of Appeals has made clear that "[t]he statutory bar to contribution may not be circumvented by the simple expedient of calling the claim indemnification." *Rosado*, 66 N.Y.2d at 25, 494 N.Y.S.2d at 854, 484 N.E.2d at 1357 (citations omitted). In contribution, which arises without any agreement amongst the wrongdoers, joint tortfeasors are required to pay a share proportionate to their liability to one who has discharged their joint liability. In indemnification, which arises out of an express or implied contract, the party held legally liable shifts the entire loss to another "to prevent a result which is regarded as unjust or unsatisfactory". *See, e.g., Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 689–90, 555 N.Y.S.2d 669, 674, 554 N.E.2d 1257, 1262 (1990); *Rosado*, 66 N.Y.2d at 23–24, 494 N.Y.S.2d at 853, 484 N.E.2d at 1356; *McDermott*, 50 N.Y.2d at

216, 428 N.Y.S.2d at 645–46, 406 N.E.2d at 461.

■ A right to "implied indemnification" can exist even absent an *express* agreement creating a right to indemnification. *See, e.g., Bellevue South Assocs. v. HRH Constr. Corp.*, 78 N.Y.2d 282, 296, 574 N.Y.S.2d 165, 171, 579 N.E.2d 195, 201 (1991); *Mas*, 75 N.Y.2d at 690, 555 N.Y.S.2d at 674, 554 N.E.2d at 1262; *see also Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346, 351 (2d Cir.1986). It arises when " '[a] person [ ], in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity.' " *McDermott*, 50 N.Y.2d at 216–17, 428 N.Y.S.2d at 646, 406 N.E.2d at 462 (quoting Restatement, Restitution § 76).[1]

■ The inquiry thus becomes, under what circumstances "should [the duty] have been discharged by the other"? Interpreting New York law, the Second Circuit has distinguished between two sets of circumstances in which a right to implied indemnification may exist. The first is where the special nature of a contractual relationship between the parties gives rise to the right (the "implied contract theory"); the second is a tort-based right "found where there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other" ("implied in law indemnity"). *Goodpasture*, 782 F.2d at 351.[2]

■ In what *Goodpasture* terms as the "implied contract" theory of implied indemnification, the proposed indemnitee holds a non-delegable duty to the plaintiff, the responsibility for which he transfers to the proposed indemnitor by agreement. *See Ramirez v. National R.R. Passenger Corp.*, 576 F.Supp. 95, 99–100 (S.D.N.Y. 1983). This theory is particularly well illustrated by the New York Court of Appeals decision in *Mas v. Two Bridges Assocs.*, 75 N.Y.2d 680, 555 N.Y.S.2d 669, 554 N.E.2d 1257 (1990). In *Mas* the plaintiff was injured in attempting to escape from an elevator stuck between floors of her apartment building. She sued the owner of the building and the Otis Elevator Company ("Otis"), which had contracted with the owner to maintain the elevator. The jury apportioned 85% of the fault to the owner and Otis for failure to maintain and repair the elevator. The court held that the owner had a right to implied indemnification from Otis. Although as an owner of a multiple dwelling, the owner owed a non-delegable duty to the plaintiff to maintain the premises in a reasonably safe condition, Otis had contractually assumed the duty of maintaining the elevator. Thus, while the owner was liable to the plaintiff by operation of law, Otis was liable over to the owner in indemnification because it had agreed to maintain the elevator. The court wrote that:

> [a]s between the owner and one voluntarily undertaking responsibility for maintenance ... the party assuming the contractual duty is liable to the owner for the damages the owner must pay.

*Id.* at 687–88, 555 N.Y.S.2d at 673, 554 N.E.2d at 1261.

No right to implied indemnification exists when the proposed indemnitee retains a duty it owes directly to the plaintiff. In *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 494 N.Y.S.2d 851, 484 N.E.2d 1354 (1985), for instance, the court found that the manufacturer of a machine that injured the plaintiff had no right to implied indemnification against the plaintiff's employer, who was contractually required to install all "necessary guards for the exposed moving parts of the machine....," because the manufacturer retained a direct

---

**1.** Implied indemnification apparently is the same as contractual indemnification for purposes of G.O.L. § 15–108. *See McDermott*, 50 N.Y.2d at 220, 428 N.Y.S.2d at 648, 406 N.E.2d at 465.

**2.** Despite the conceptual distinction between "implied contract" and "implied in law" indem-

nification drawn in *Goodpasture*, New York courts clearly regard implied indemnification as a quasi-contractual theory. *McDermott*, 50 N.Y.2d at 216, 428 N.Y.S.2d at 646, 406 N.E.2d at 462; *see also Mas*, 75 N.Y.2d at 690, 555 N.Y.S.2d at 674, 554 N.E.2d at 1262 (implied indemnification is restitution concept).

independent duty to the plaintiff to install safety devices. *Id.*, 66 N.Y.2d at 23, 494 N.Y.S.2d at 852, 484 N.E.2d at 1355. Similarly, in *Guzman v. Haven Plaza Housing Dev. Fund Co.*, 69 N.Y.2d 559, 516 N.Y.S.2d 451, 509 N.E.2d 51 (1987), the court held that a building owner had no right to implied indemnification from its tenant for damages it paid to plaintiff, who was injured walking down steps in the building. While the lease required the tenant to maintain the steps, the building owner had retained " 'a right to enter the demised premises at all times' for the purpose of inspection and the right to make repairs at tenant's expense 'if the tenant fail[ed] to make' them." *Id.* at 564, 516 N.Y.S.2d at 452, 509 N.E.2d at 52. Thus, because the lease did not totally divest the owner of control over and responsibility for maintenance and repair, the owner had breached a duty it owed directly to the plaintiff and thus had only a claim for contribution. *Id.* at 569, 516 N.Y.S.2d at 455, 509 N.E.2d at 55.

■ *Goodpasture*'s "implied in law" indemnification takes more varied forms. Implied indemnification arises where one tortfeasor is held liable solely on account of the negligence of another, *Guzman*, 69 N.Y.2d at 567–68, 516 N.Y.S.2d at 454, 509 N.E.2d at 54. In other words, the negligence of the proposed indemnitee is "secondary," that is, his liability is based on a non-delegable duty to the plaintiff as a matter of law, and the negligence of the proposed indemnitor is "primary," or active or "actual." *See Bellevue South Assocs.*, 78 N.Y.2d at 296, 574 N.Y.S.2d at 171, 579 N.E.2d at 201; *Ramirez*, 576 F.Supp. at 98.

■ Vicarious liability is a classic example of implied in law indemnification. *McDermott*, 50 N.Y.2d at 218 n. 4, 428 N.Y.S.2d at 647 n. 4, 406 N.E.2d at 463 n. 4; *see also Rosado*, 66 N.Y.2d at 24, 494 N.Y.S.2d at 853, 484 N.E.2d at 1356 (implied indemnity often employed in favor of one vicariously liable for another's tort). Alternatively, implied in law indemnification may be based on an independent duty owed by the proposed indemnitor to the proposed indemnitee. In *Bellevue South Assocs.*, a subcontractor was held to have breached a contract by installing defective tiles in plaintiff's building. The New York Court of Appeals held that the subcontractor had a right to implied indemnification from his supplier based on an implied warranty of merchantability for the defective tiles. *Bellevue South Assocs.*, 78 N.Y.2d at 299, 574 N.Y.S.2d at 173, 579 N.E.2d at 203. And, in *McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980), the Court of Appeals held that New York City could claim indemnification against the manufacturer of a truck that had severed the arm of a sanitation worker based on duties owed to the city by the manufacturer under the law of products liability. *Id.* at 219–21, 428 N.Y.S.2d at 647–48, 406 N.E.2d at 463–64.

■ The LIRR/MTA argues that the Ditmas Group and Poling are strictly liable for harm resulting from the storage and handling of gasoline, an inherently dangerous substance and "dangerous instrumentality," under N.Y. Environmental Conservation Law § 23–0101. LIRR/MTA Jan. 8, 1991 Memo at 1; LIRR/MTA Jan. 9, 1991 Memo at 1–4. The LIRR/MTA argues that the Ditmas Group and Poling fall under this statute as they store gasoline. § 23–1717(8) provides that:

> The storage … of liquified natural and petroleum gas within the state, in view of its extreme volatility, high flammability and dangerous qualities, if mishandled, resulting in accidental release, is determined to be hazardous and entails strict liability on the part of any person, … that undertakes such activities in the State. Neither compliance with the requirements of this title nor the exercise of due care shall excuse any such person from liability for personal or property damage determined to be caused by the accidental release of liquified natural or petroleum gas within the State, and neither proof of means of ignition nor distinctions between directing consequential damage shall relieve such person of absolute liability without regard to intent or negligence of any person or property damage thereby caused.

N.Y. Environmental Conservation Law § 23–1717(8).

Regardless of the statute's assumed imposition of strict liability on the Ditmas

Group and Poling, the LIRR/MTA is not relieved of its apportioned share of liability for its own negligence unless it can establish either that it would be held liable for the primary negligence of the Ditmas Group and/or Poling or that the Ditmas Group and/or Poling have assumed the LIRR/MTA's duty of reasonable care by agreement, as in cases such as *Mas*, or by operation of law, as in cases such as *Bellevue South Assocs.* or *McDermott.*[3]

Moreover, the LIRR/MTA has not established the existence of any relationship or theory pursuant to which the Ditmas Group and/or Poling can be said to have assumed the LIRR/MTA's duty of care either by agreement or by operation of law.

The LIRR/MTA cites the New York Oil Spill Prevention, Control, and Compensation Act, N.Y. Navigation Law §§ 170 *et seq.* (McKinney's 1992) (the "Act"). The purpose of that law is "to ensure a clean environment and healthy economy for the state by preventing the unregulated discharge of petroleum ["intentional or unintentional action or omission resulting in the release, spillage, leakage, pumping, pouring, admitting, emptying or dumping the petroleum into the waters of the State or onto land from which it might flow...." *Id.* § 172(8)] which may result in damage to lands, water or natural resources of the state by ... providing for liability for damage sustained within the state as a result of such discharges." *Id.* § 171. Section 181 provides that:

1. Any person who has discharged petroleum shall be strictly liable without regard to fault, for all clean up and removal costs and all direct and indirect damages no matter by whom sustained as defined in this section.

\* \* \* \* \* \*

3. The owner or operator of a major facility or vessel which has discharged petroleum shall be strictly liable, without

regard to fault ... for all clean up and removal costs and all direct and indirect damage paid by the fund.

Based on this statute, the LIRR/MTA contends that its duty has been transferred to the Ditmas Group and Poling.

While the court applauds the LIRR/MTA for its efforts in putting forth this argument, particularly given the extreme time pressure imposed by the circumstances, it does not satisfy the requirements for finding a right to implied indemnification. First, the Act does not appear to be applicable to these parties and these facts. Parties liable under this Act are strictly liable to the "Fund," defined as the "New York environmental protection and spill compensation fund," N.Y. Environmental Conservation Law § 172(9), not to private entities paying personal injury damage claims. Furthermore, the Act appears to be directed at environmental concerns, limited to liability for cleanup and removal costs of oil spills. There is no indication that the Act contemplates liability for personal injury or property damage occasioned by an explosion involving a gasoline spill.

Second, even assuming that the Navigation Law's provision for strict liability to pay "indirect" damages resulting from a spill encompasses personal injury and property damage claims paid by a joint tortfeasor, the LIRR/MTA has not successfully argued that the law operates to transfer its direct duty of reasonable care to the Ditmas Group and/or Poling. Nevertheless, as demonstrated by the cases discussed above, and as concluded by a court within this district:

To maintain a cause of action for indemnity, the party seeking indemnity must show that the proposed indemnitor owed it a duty to perform the act in question. Absent a duty between the tortfeasors independent of the plaintiff's cause of action, there can be no claim for indemnity.

---

3. That the LIRR/MTA owed the parties concerned a duty of care has been established by prior opinions of this court. *See In re the Complaint of Poling Transp. Corp.*, 764 F.Supp. 857 (1991), *modified*, No. 87 Civ. 8505, slip. op., 1991 WL 113769 (June 17, 1991). No party has

raised a theory upon which the LIRR/MTA may be held liable without fault for the negligence of the Ditmas Group and/or Poling. If a jury determines the LIRR/MTA to be free of negligence, the LIRR/MTA would not be required to pay damages.

*Ramirez v. National R.R. Passenger Corp.*, 576 F.Supp. 95, 99 (S.D.N.Y.1983) (citing *Smith v. Hooker Chem. and Plastics Corp.*, 83 A.D.2d 199, 200–01, 443 N.Y.S.2d 922, 924 (4th Dept.1981)).

The Settlement operates to remove the claims by the Individual Claimants and by the Ditmas Group against Poling, the various counter- and cross-claims asserted between those parties, and claims for contribution by or against the settling parties, including those asserted by the LIRR/MTA. As this opinion concludes, the only claim against Poling not resolved by the Settlement, the LIRR/MTA's claim for indemnification, is dismissed. Thus, what remains are the claims by the Individual Claimants and Poling against the LIRR/MTA.

This being so, there no longer appears to be any basis for jurisdiction. This case came under this court's admiralty jurisdiction when Poling filed its claim for exoneration or limitation of liability under 28 U.S.C. § 1333 and 46 U.S.C. App. § 183(a). This court determined that it would exercise pendent jurisdiction over the common law cross-claims. *See In re Complaint of Poling Transp. Corp.*, 776 F.Supp. 779, 786 (S.D.N.Y.1991), and that "[s]ince virtually the entire case must be presented just on the limitation issue, even if the court denies limitation, it would be consistent with the purposes of pendent jurisdiction to retain the state issues." *Id.* (citing *Enercomp, Inc. v. McCorhill Pub., Inc.*, 873 F.2d 536, 545–46 (2d Cir.1989)).

Because liability has already been determined as far as the admiralty case is concerned, and the damages case has not been made ready for trial, there is no reason to exercise pendent jurisdiction. In fact, this court may be compelled to dismiss the pendent claims against the LIRR. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").

### Conclusion

For the foregoing reasons, the motion to dismiss the indemnification claims of the LIRR/MTA is granted. In view of the Settlement, all claims against Poling, the Ditmas Group and the Individual Claimants are dismissed with prejudice. Submit judgments on notice.

It is so ordered.

### ON MOTIONS TO VACATE OR MODIFY

A motion has been made by claimants David Theophilous ("Theophilous"), Antonio Coca ("Coca") (together with Sylvia Coca, the "Individual Claimants") and the Long Island Railroad and the Metropolitan Transportation Authority (the "LIRR/MTA") pursuant to Rule 60(b), Fed.R.Civ.P., to vacate this court's Decision and Order of January 9, 1992 (the "January 9 Order") and its Order of Dismissal and Discontinuance dated January 22, 1992 (the "January 22 Order") (together with the January 9 Order the "Orders"). In the alternative, the Individual Claimants and the LIRR/MTA move for an order pursuant to Rule 60(a), Fed.R.Civ.P., correcting certain inaccuracies in the January 9 and January 22 Orders.

The motion to vacate the Orders is denied. The Individual Claimants, plaintiff Poling Transportation Corp. and the Motor Vessel Poling Bros. No. 7 (collectively, "Poling") and the group of claimants referred to in prior opinions of this court as the "Ditmas Group" stated immediately before trial, both in their papers and in open court, that they had reached a settlement (the "Settlement"). *See* Transcript, Jan. 8, 1992, at 13. The sole contingency to the Settlement, otherwise reportedly definite and complete—the dismissal of the LIRR/MTA's indemnification claims against Poling and the Ditmas Group, *see id.*—was resolved by the January 9 Order, pursuant to which the indemnification claims were dismissed. That some parties have allegedly reneged on the Settlement is not grounds for vacating the Orders.[1]

---

1. The Individual Claimants contend that New York C.P.L.R. § 2104 governs the determination of the existence of the Settlement. Even assuming that it does, *cf. Lady Madonna Indus. v. Pereira*, 76 B.R. 281, 288 (S.D.N.Y. 1987) (state law applies to determine existence of settlement

The motion to modify the Orders is granted. The Orders are hereby amended as follows:

First: because the Individual Claimants did not move to dismiss the LIRR/MTA's indemnification claims against them, any references to the Individual Claimants as parties to or beneficiaries of the motion to dismiss the LIRR/MTA's indemnification claims are stricken from the Orders.

Second: the language on page 4 of the January 22 Order and on page 1051 of the January 9 Order that "liability has been determined as far as the admiralty case is concerned" is hereby replaced with the following language: "All claims made, or that could have been made, in the present proceeding having been resolved, liability has been determined in the admiralty proceeding. However, because Poling's negligence and/or privity were not litigated in this proceeding, this order is not dispositive of those issues."

Finally, Poling's application for attorneys' fees and costs related to this motion is denied.

It is so ordered.

in bankruptcy), the Settlement is enforceable. Section 2104 provides that:

> An agreement between parties or their attorneys relating to any matter in an action, *other than one made between counsel in open court,* is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.

N.Y.C.P.L.R. § 2104 (emphasis added). As discussed above, the Settlement was reported in open court on January 8, 1992. This court directly resolved the only open term of which it was informed. Since the Settlement was therefore reported as definite and complete, it is enforceable. *See In re Dolgin Eldert Corp.,* 31 N.Y.2d 1, 9, 334 N.Y.S.2d 833, 839, 286 N.E.2d 228, 232 (1972).