Frederick W.A. KNIGHT, Plaintiff,

v.

H.E. YERKES AND ASSOCIATES,
INC., Defendant.

H.E. YERKES AND ASSOCIATES,
INC., Third–Party Plaintiff,

v.

Robert Francis O'LEARY,
Third–Party Defendant.

No. 87 Civ. 0702 (PKL).

United States District Court,
S.D. New York.

Dec. 16, 1987.

Weg & Myers, P.C., New York City (Dennis T. D'Antonio, Carl A. Formicola, of counsel), for plaintiff.

Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, (Philip J. Walsh, James M. Kaplan, Maura E. Mahon, of counsel), for defendant and third-party plaintiff.

Killarney Rein Brody & Fabiani, New York City (John V. Fabiani, of counsel), for third-party defendant.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff Frederick W.A. Knight ("Knight"), a resident of Thailand, brought this action seeking $34,000,000 from defendant H.E. Yerkes and Associates, Inc. ("Yerkes") for breach of an agreement to procure proper insurance coverage for plaintiff's personal property. Yerkes filed a third-party complaint against Robert Francis O'Leary ("O'Leary") alleging that O'Leary is liable for any judgment obtained by Knight against Yerkes.

Two motions are now before the Court. First, Yerkes has moved for an order pursuant to Local Rule 39 or section 8501 of the New York Civil Practice Law to compel Knight to post a bond as security for costs. Second, O'Leary has moved to dismiss the third-party complaint. For the reasons stated below, both motions are granted.

## FACTUAL BACKGROUND

Between 1976 and 1979, Knight purchased 222 antique statues in Thailand for approximately $65,000. In 1980, a Thai appraiser hired by Knight valued the collection at $20,205,000. In April of 1981, the same appraiser revised his estimate to $27,000,000, and then to $30,307,000 in September of the same year. The appraiser was to receive 5% of the selling price as compensation for his services. The appraiser died, however, shortly after his last appraisal.

In the meanwhile, Knight had transported the statues from Thailand to Singapore, and in 1980 requested that O'Leary, an insurance broker, obtain a policy of insurance covering the statues for a voyage from Singapore to Holland. O'Leary in turn requested that Yerkes obtain proper insurance. Yerkes determined that the St. Paul Fire & Marine Insurance Company would be interested in insuring a portion of the twenty million dollar risk on the condition that the statues be inspected by an expert of their choosing. Knight did not pursue the coverage with St. Paul.

In February of 1981, Knight obtained coverage of $20,205,000 from London underwriters through the insurance brokerage firm of Hogg Robinson & Gardner Mountain (Marine) Ltd. ("Hogg Robinson") for shipment of the statues from Singapore to Holland. In May of 1981, after receiving the first revised estimate from his appraiser, Knight requested and obtained

through Hogg Robinson an additional $10,-000,000 in coverage.

In June 1981, however, Robert Jensen, Knight's broker at Hogg Robinson, received two anonymous telephone calls informing him that Knight was about to perpetrate a fraud. The lead underwriters of the insurance then demanded that a random sample of the statues be inspected before the voyage from Singapore to Holland. The appraiser retained by the insurance underwriters concluded that the statues were "grossly overvalued and, in some, if not all cases, replicas." Affidavit of James M. Kaplan, Esq., in Support of Motion to Compel Posting of Security for Costs, sworn to on May 28, 1987, ¶ 8 (hereinafter "Kaplan Aff."). The appraiser's report concluded that "the evidence currently available to underwriters suggests that the proper value of the consignment is nominal only (possibly approximately one pct. of the value declared)." *Id.* The policy procured through Hogg Robinson was then cancelled.

Knight again contacted O'Leary and requested Yerkes to obtain coverage in the amount of $30,000,000 in the United States for a voyage from Singapore to Marseilles and then Paris. The coverage was procured, but the statues were not shipped during the period of coverage and the policy lapsed. In October of 1982, Knight again approached Yerkes through O'Leary and requested that Yerkes re-obtain $30,-300,000 in insurance for a voyage from Singapore to Greece, where a purchaser of the statues was located. Yerkes succeeded in obtaining insurance for the voyage.

In January 1983, the statues were loaded on board the ALIAKMON RUNNER in Singapore. On February 7 or 8, 1983, the ship sank in the Indian Ocean, and the statues were lost. Knight sought to make a claim on the insurance that had been placed for him by Yerkes, but the underwriters declined coverage and sought to void the policy *ab initio*. Knight commenced a suit against the underwriters in which the Hon. Constance Baker Motley, District Court Judge of this Court, granted summary judgment to the underwriters and dismissed the complaint after finding that Knight had materially misrepresented the risk involved. *Knight v. U.S. Fire Insurance Co.*, 651 F.Supp. 477 (S.D.N.Y. 1986). The Court of Appeals for the Second Circuit affirmed Chief Judge Motley's decision, *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9 (2d Cir.1986), *cert. denied*, — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987), and Knight then commenced the instant action alleging that Yerkes had breached its agreement to procure proper and effective insurance.

## I. YERKES' MOTION FOR SECURITY FOR COSTS

Section 8501(a) of the New York Civil Practice Law provides:

Except where plaintiff has been granted permission to proceed as a poor person or is the petitioner in a habeas corpus proceeding, upon motion by the defendant without notice, the court or a judge thereof shall order security for costs to be given by the plaintiffs where none of them is a domestic corporation, a foreign corporation licensed to do business in the state or a resident of the state when the motion is made.

N.Y.Civ.Prac.Law § 8501 (McKinney 1981). Rule 39 of the Local Rules of this Court provides:

The court, on motion or in its own initiative, may order any party to file an original bond for costs or additional security for costs in such amount and so conditioned as it may designate. For failure to comply with the order the court may make such orders in regard to non-compliance as are just, and among others the following: an order striking out pleadings or staying further proceedings until the bond is filed or dismissing the action or rendering a judgment by default against the non-complying party.

Civil Rule 39 of the United States District Courts for the Southern and Eastern Districts of New York.

█ Becasue this is a diversity action, this Court must apply the substantive law of the state in which it is sitting. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58

S.Ct. 817, 82 L.Ed. 1188 (1938). But as the Court of Appeals for the Second Circuit has recently noted, "[i]n diversity actions, federal courts are 'not bound to follow state rules on security for costs where a federal local rule granting discretion is applicable,' although they may look to state rules for guidance." *Atlanta Shipping Corp., Inc. v. Chemical Bank*, 818 F.2d 240, 251 (2d Cir.1987) (quoting *Rapol v. Henry R. Jahn & Son Inc.*, 84 F.R.D. 42, 45 (S.D.N.Y. 1979)). Section 8501 of the New York CPLR is therefore not binding on this Court, but in looking to that statute for guidance, the Court finds that plaintiff should be required to file a bond for costs pursuant to Local Rule 39.

Plaintiff is a resident of Thailand, and if defendant prevails in this litigation, collection of costs would likely prove difficult. By plaintiff's own admission, he has "incurred substantial expenses in maintaining an action brought by his former counsel to recover more than $90,000 in allegedly unpaid fees and disbursements and his property has been the subject of attachment proceedings." Affidavit of Carl A. Formicola, Esq., in Opposition to Motion to Compel Posting of Security for Costs, sworn to on August 18, 1987, ¶ 17. Against this background, the Court believes that there is a substantial risk that plaintiff would be unable to pay defendant's costs should defendant prevail, and that plaintiff should therefore be required to file a bond for costs.

Defendant requests that the amount of the bond be set at $25,000 because Yerkes will have to depose persons in London, Singapore, Greece and Thailand as well as in the United States. Memorandum of Law in Support of Motion to Compel Posting of Security for Costs at 8. Defendant points out that 66 separate depositions were taken

in the prior action by Knight against the underwriters. Kaplan Aff. ¶ 14. Plaintiff contends that it has provided copies of forty depositions to defendant's counsel, Formicola Aff. ¶ 11, and that these depositions should be available to Yerkes for impeachment purposes and perhaps also for Yerkes' case-in-chief. Plaintiff's Memo at 8–9.[1] But the issue in this case, whether Yerkes breached its agreement to procure proper insurance is not the same issue as in the prior action.

In light of the substantial number of depositions that will likely take place and the location of some of those depositions, it is clear that defendant will incur substantial costs in the defense of this action. There appears to be a considerable risk that plaintiff will be unable to pay defendant's costs should the defendant ultimately prevail. The plaintiff is therefore ordered to file a bond in the amount of $15,000 as security for costs. Failure to file the bond within twenty days may result in an order striking out the complaint or staying further proceedings until the bond is filed as provided in Local Rule 39.

## II. O'LEARY'S MOTION TO DISMISS THE THIRD–PARTY COMPLAINT

On April 16, 1987, Yerkes filed a third-party complaint against O'Leary "for all sums that may be adjudged against defendant H.E. Yerkes & Associates, Inc. in favor of plaintiff Frederick W.A. Knight." Third–Party Complaint ¶ 14. Because the third-party complaint was filed within ten days of serving the original answer in the case, leave of Court was not required.[2]

Third-party defendant O'Leary has brought a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the third-party complaint. The law in this Circuit is clear that "the court should not

---

1. Plaintiff will not at this time stipulate to defendant's right to use the depositions from the prior action at trial in this case. Plaintiff's Memo at 8.

2. Rule 14(a) provides in pertinent part:
   At any time after commencement of the action a defending party, as third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer.
   Fed.R.Civ.P. 14(a).

dismiss the complaint unless it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir.1985) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957) (footnote omitted)). *See also Meyer v. Oppenheimer Management Corporation*, 764 F.2d 76, 80 (2d Cir.1985). Thus, "[t]he function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Ryder Energy Distribution Corporation v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir.1980).

The Court must therefore accept as true Yerkes' allegations that O'Leary, on behalf of Knight, sought to procure insurance coverage from Yerkes, that O'Leary knew Knight had previously secured similar insurance and that such insurance had been cancelled, that O'Leary failed to disclose to Yerkes that Knight had previously secured such insurance, and that by this failure to disclose this information to Yerkes, O'Leary prevented Yerkes from securing effective insurance. Complaint ¶¶ 10–13. Even accepting these allegations as true, the Court finds that Yerkes has failed to state a claim on which relief can be granted, and the Court therefore grants O'Leary's motion to dismiss.

■ The relief requested by the third-party plaintiff, judgment "for all sums that may be adjudged against defendant H.E. Yerkes & Associates in favor of plaintiff Frederick W.A. Knight," Third–Party Complaint ¶ 14, appears to be a claim for indemnification. Indeed this is the impression under which third-party defendant labored in its motion to dismiss the third-party complaint. In its response to the motion to dismiss, however, third-party plaintiff maintains that it seeks contribution from O'Leary rather than indemnification. Yerkes' response states that: "Yerkes has not specifically requested indemnification from O'Leary but instead seeks apportionment of "all sums that may be adjudged against [Yerkes] in favor of [Knight]." Third–Party Plaintiff's Memorandum of Law in Opposition to Third–Party Plaintiff's Motion to Dismiss the Third–Party Complaint at 2 (hereinafter "Third–Party Plaintiff's Memo"). Yet nowhere in the third-party complaint is there any mention of apportionment, and the action, as pleaded, appears to be for indemnification, not for contribution.

As the Third–Party Defendant's Memorandum of Law in Support of the Motion to dismiss demonstrates, there is no claim stated for indemnification and the third-party complaint cannot withstand a motion to dismiss on that basis. Indemnity usually arises from an express agreement by which one party agrees to hold the other harmless for claims brought against it by a third party. *See, e.g., Massachusetts Mutual Life Insurance Co. v. Weinbach*, 635 F.Supp. 1460, 1461–62 (S.D.N.Y.1986). There has been no express agreement to indemnify in this case. Under New York law, however, indemnity may be implied "to allow one who was compelled to pay for the wrong of another to recover from the wrongdoer the damages paid to the injured party." *Hanley v. Fox*, 97 A.D.2d 606, 607, 468 N.Y.S.2d 193, 194 (3d Dept.1983) (citing *D'Ambrosio v. City of New York*, 55 N.Y.2d 454, 460–61, 435 N.E.2d 366, 368–69, 450 N.Y.S.2d 149, 151–52). In a case of implied indemnity, however, "where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied." *Hanley v. Fox*, 97 A.D.2d at 607, 468 N.Y.S.2d at 194. Because the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that Yerkes was not at least partially responsible for harm, for it was Yerkes that allegedly breached the contract, not O'Leary. There can therefore be no cause of action in indemnity.[3]

■ Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain

---

**3.** Indeed, third-party plaintiff seems to have abandoned indemnity as a theory of recovery, for its entire brief in response to the motion deals with contribution, rather than indemnity.

statement of the claim showing that the pleader is entitled to relief and ... a demand for judgment for the relief the pleader seeks." Fed.R.Civ.P. 8(a). Third-party plaintiff requests that if the Court finds its claim for contribution is not adequately pleaded, that it be granted leave to replead the third-party complaint. In that event, the Court would doubtless encounter a new motion to dismiss by third-party defendant raising the same objections now presented in the reply memorandum of law. To avoid the filing of duplicative papers and to preserve judicial resources, the Court will construe the pleadings liberally to state a claim for contribution that is sufficient under Rule 8.

■ Third-party plaintiff Yerkes asserts that it may claim contribution from O'Leary under either of two legal theories. First, Yerkes maintains that the Court may uphold a contribution claim if it finds that O'Leary, while acting as Knight's agent, breached his fiduciary duty to Knight by failing to disclose material facts to Yerkes or the insurers. Third–Party Plaintiff's Memo at 11–16. Second, Yerkes argues that its contribution claim can be upheld if the Court finds a sufficient "nexus of duty" between O'Leary and Yerkes. *Id.* at 17–23. Both these theories are premised on a presumption that a cause of action for contribution will lie where the underlying claim is for breach of contract.

The relevant New York law on contribution is found in section 1401 of the New York Civil Practice Law. Section 1401 provides:

> Except as provided in section 15–108 of the general obligations law, two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y.Civ.Prac.Law § 1401 (McKinney 1976). This statute was enacted after the New York Court of Appeals decided the case of

*Dole v. Dow Chemical Co.*, 30 N.Y.2d 143, 282 N.E.2d 288, 331 N.Y.S.2d 382 (1972), which provided for equitable contribution among joint tortfeasors.

There is some authority indicating that contribution may be permitted when the underlying action is for breach of contract, rather than for tortious conduct. The Practice Commentary to the statute states that "nothing in the section requires that the liability of the defendants arise from tort. The liability may be contractual or may arise from a breach of warranty which lies somewhere in the mists dividing tort and contract law." McLaughlin, Practice Commentary, McKinney's Cons.Laws of N.Y.1976, Vol. 7B, C1401:3, at 362. Several cases, citing Judge McLaughlin's commentary, have found that tortious conduct is not necessary for contribution to be allowed. *See, e.g., Jakobleff v. Cerrato*, 97 A.D.2d 786, 468 N.Y.S.2d 894, 895 (2d Dept. 1983); *Nassau Roofing & Sheet Metal Co. Inc. v. Celotex Corporation*, 74 A.D.2d 679, 424 N.Y.S.2d 786, 788 (3d Dept.1980); *Westchester County v. Welton Becket Associates*, 102 A.D.2d 34, 478 N.Y.S.2d 305 (2d Dept.1984), *appeal dismissed*, 64 N.Y. 2d 734, 475 N.E.2d 123, 485 N.Y.S.2d 752, *aff'd*, 66 N.Y.2d 642, 485 N.E.2d 1029, 495 N.Y.S.2d 364 (1985). Weinstein, Korn and Miller's *New York Civil Practice* also notes that contribution has been allowed in a breach of contract case. 2A J. Weinstein, H. Korn & A. Miller, *New York Civil Practice* ¶ 1401.13 at 14–45 (1987). The only case cited for that proposition is *City of New York v. Bettigole*, 57 A.D.2d 797, 394 N.Y.S.2d 642 (1st Dept.1977). But in *Bettigole* claims for both negligence and breach of contract were asserted, and the court held only that contribution is not limited to tort cases.

The 1974 Judicial Conference Report on the Civil Practice Law and Rules that discussed the newly amended section 1401, however, makes no mention of any intention to expand the law of contribution to cases in which underlying liability is contractual.[4] Numerous cases cited for the

---

4. The Report explained that section 1401 ex-    panded the concept of "joint tortfeasor":

proposition that section 1401 is to be given a broad, expansive interpretation refer only to tortfeasors. Thus, Justice Kupferman's insightful opinion in *Lippes v. Atlantic Bank of New York*, 69 A.D.2d 127, 419 N.Y.S.2d 505 (1st Dept.1979), is frequently cited as supporting a broad reading of the contribution statute. But Justice Kupferman's opinion only went so far as to say: "[w]hat becomes apparent from a reading of the cases is that any tortious act ... resulting in damage ... constitutes 'injury to property' within the contemplation of CPLR Sects. 1401 and 1411." 69 A.D.2d at 141, 419 N.Y.S.2d at 513. The New York Court of Appeals has stated that "[a] claim for contribution exists only when two or more tort-feasors share in responsibility for an injury, in violation of duties they respectively owed to the injured person." *Smith v. Sapienza*, 52 N.Y.2d 82, 87, 417 N.E.2d 530, 532, 436 N.Y.S.2d 236, 238 (1981).

It is clear that if O'Leary can be held liable to Yerkes for contribution it can only be for injury to property, not for personal injury or wrongful death. But section 25–b of the New York General Construction Law defines "injury to property" as "an actionable act, whereby the estate of another is lessened, *other than a personal injury, or the breach of a contract.*" N.Y. Gen.Constr.Law § 25–b (McKinney 1988 Supp.) (emphasis added).

A recent decision of the Third Department squarely held that section 1401 does not apply to contribution claims rooted entirely in contract. *Board of Education of the Hudson City School District v. Sargent, Webster, Crenshaw & Folley*, 125 A.D.2d 27, 511 N.Y.S.2d 961 (3d Dept.), *leave to appeal granted*, 128 A.D.2d 1024, 513 N.Y.S.2d 651 (3d Dept.1987). In *Hudson City*, the court found that

> CPLR article 14 does not and was never intended to apply where, as here, the potential liability to the plaintiff of both

the defendant and the third-party defendant is purely for contractual benefit of the bargain or loss of the value of promised performance damages. The legislative history of CPLR article 14 clearly shows that the sole purposes (relevant here) of sections 1401 and 1402 were, first, to codify the changes in the substantive law of torts for equitable contribution among *tortfeasors* which the Court of Appeals announced in *Dole v. Dow Chem. Co.*, 30 N.Y.2d 143, 331 N.Y.S.2d 382, 282 N.E.2d 288, and second, to eliminate the procedural barriers to recovery for contribution among joint *tortfeasors* which existed under CPLR former article 14.

*Hudson City*, 125 A.D.2d at 29, 511 N.Y.S.2d at 963 (emphasis in original). The court stressed that its decision should not in any way limit the application of article 14 to conduct that was tortious:

> True, the contribution statute has been held to apply when an injured plaintiff asserts rights under a breach of warranty or strict liability theory. But by now, it should be abundantly clear that the reason contribution is enforced is that the underlying act of manufacturing and delivering a dangerously defective product causing injury is not only a breach of contract, but also a tortious wrong, and thus, gives rise to the full panoply of rights and remedies under the common law and statutory law of torts, including those created under CPLR article 14.

*Hudson City*, 125 A.D.2d at 29–30, 511 N.Y.S.2d at 963.

The latest Practice Commentary indicates: "The original Practice Commentary also suggested that article 14 of the CPLR might apply to contribution claims between defendants whose liability is rooted exclusively in contract, as opposed to tort law. This construction of the statute has been

---

This provision is broader than that ascribed to a rule encompassing only "joint tortfeasors" as that phrase has sometimes been construed.

The section applies not only to "joint torfeasors', but also, where otherwise appropriate, to "concurrent tortfeasors", "successive and independent tortfeasors" and to alternative tortfeasors.

McKinney's 1974 Session Laws of N.Y. at 1806–06.

The Report also indicates that article 14 extends to intentional tortfeasors, *id.* at 1806, and to cases involving breach of warranty, strict and absolute liability. *Id.* at 1807–08.

expressly rejected by the Appellate Division, Third Department." McLaughlin, Practice Commentary, McKinney's Cons.Law of N.Y. Vol. 7B, 1988 Supp. at 99.

■ This Court finds the reasoning of the Third Department in *Hudson City* persuasive, and therefore concludes that there can be no claim for contribution when the underlying action is one for breach of contract. In the instant case, the statute of limitations for any tortious conduct that might have occurred ran before the filing of this action. The original action of Knight against Yerkes can therefore be based only on a theory of breach of contract. Because there can be no claim for contribution when the underlying claim is contractual, and in no way tortious, the third-party complaint must be dismissed.[5]

### CONCLUSION

Plaintiff is ordered to file a bond in the amount of $15,000 for costs. Failure to file the bond within twenty days will result in an appropriate order pursuant to Local Rule 39.

The third-party complaint is dismissed in its entirety for failure to state a claim upon which relief can be granted.

Counsel for plaintiff and defendant are hereby ordered to appear at a Pre–Trial Conference in Courtroom 36 on January 8, 1988, at 2:00 o'clock in the afternoon.

SO ORDERED.

---

**5.** Third-party defendant O'Leary has also moved for the imposition of sanctions on Yerkes pursuant to Rule 11 of the Federal Rules of Civil Procedure. Because the law of New York was not entirely clear as to whether a claim for contribution would lie when the underlying action is contractual, the Court finds that imposition of sanctions would be inappropriate.