**GENERAL CONFERENCE OF SEVENTH–DAY ADVENTISTS (RISK MANAGEMENT SERVICES), formerly known as, Gencon Risk Management Services, Adventist Health Systems/U.S. and Adventist Health Systems/U.S. Liability Trust, Plaintiffs,**

v.

**AON REINSURANCE AGENCY, INC., formerly known as Cole, Booth, and Potter, Inc., formerly known as Alexander & Alexander of New York, Inc., formerly known as Reed Stenhouse Inc. of New York, formerly known as Sten–Re, Cole, and Associates, Inc., Richard Cole and Thomas Simone, Defendants.**

No. 92 Civ. 8090 (WCC).

United States District Court, S.D. New York.

July 22, 1994.

Opinion Reconsidering Decision and Reaffirming Sept. 23, 1994.

Kramer Martynetz & Verbesey, New York City, for plaintiffs; Myron C. Martynetz, Alan M. Kramer, of counsel.

Chadbourne & Parke, New York City, for defendants; Charles K. O'Neill, Lorraine M. Cody, of counsel.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiffs, General Conference of Seventh-Day Adventists Risk Management Services, f/k/a/ Gencon Risk Management Services ("Gencon"); Adventists Health Systems/U.S. ("AHS"); and Adventists Health Systems/U.S. Liability Trust ("AHS–Trust") bring this action for indemnity and contribution against AON Reinsurance Agency, Inc., f/k/a/ Sten–Re, Cole and Associates, Inc. ("Sten–Re"), Richard Cole, and Thomas Simone. In an Opinion and Order dated July 16, 1993 ("*Gencon I*"), 826 F.Supp. 107 this Court granted defendants' motion to dismiss Gencon's contribution claim, but denied the remainder of defendants' motion. Familiarity with *Gencon I* is presumed. The action is presently before the Court on defendants' motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For reasons explained below, defendants' motion is granted.

## BACKGROUND

Plaintiff AHS is an affiliate of the General Conference of Seventh–Day Adventists Church ("the Church") responsible for the supervision and maintenance of the Church's health care staff and facilities. Plaintiff Gencon is another affiliate of the Church which for all relevant periods served as AHS's insurance agent. Defendant Sten–Re was an insurance broker whose services were utilized by AHS and Gencon to help obtain excess retroactive insurance coverage for AHS and its insured entities; Sten–Re has since been acquired by defendant AON.

The gravamen of plaintiffs' Complaint is that Sten–Re failed to procure an insurance policy with sufficient breadth of coverage, i.e., one that covered staff physicians, and therefore must indemnify or contribute to an uninsured liability that was incurred by an AHS doctor and was paid by plaintiffs. The undisputed facts are as follows.

Prior to 1975 the various hospitals owned by the Church were grouped by regions, each of which regional group turned to Gencon, a separate division of the Church, for insurance and risk management services in obtaining medical malpractice coverage. In the mid–1970s, Gencon implemented a self-insurance program and designed a Malpractice Advisory Committee (the "Committee") composed of the executive heads of the regional hospital groups to manage the Medical Malpractice Program. Generally the hospitals themselves would determine their insurance needs, and then communicate these needs to the Committee; Gencon representatives, acting as insurance agents, would participate in Committee meetings and then enter the marketplace to obtain the necessary coverage. In 1982 AHS was incorporated and assumed the duties of the Committee.[1]

In 1981, the Committee decided to attempt to obtain retroactive excess medical malpractice coverage. Hence Gencon began contacting various insurance brokers, including Sten–Re, to obtain proposals from insurance companies for the excess coverage. These brokers would submit the proposals to Gencon, who, after reviewing the policies and negotiating any changes, would summarize them and make a recommendation to the Committee as to which policy to accept.

In late 1981 or early 1982, Sten–Re obtained a favorable proposal from St. Paul Surplus Lines Insurance Co. ("St. Paul Insurance"). The policy insured AHS for its liabilities in excess of its existing policy coverage for the years in question and a $1,000,000 self-insurance retention, up to a maximum of $10,000,000. AHS accepted the St. Paul policy based on the recommendation of Gencon.

In 1984, judgment was entered against Dr. Nancy Rich, an AHS staff physician at Hinsdale Hospital, for the wrongful death of Renee Barenbrugge for failure to diagnose breast cancer. Hinsdale had previously contracted with Dr. Rich to provide certain medical malpractice insurance coverage for her. Because AHS's primary insurance coverage for the relevant period had been exhausted, AHS submitted the claim to St. Paul Insurance. St. Paul, however, refused to cover the claim because the policy did not extend to licensed physicians or surgeons acting within

---

1. The events at issue in the instant case occurred prior to 1982 and thus AHS did not yet exist. For purposes of this opinion, the "Committee" and "AHS" are referred to interchangeably.

the scope of their duties. As a result, on November 13, 1986, AHS paid $2,268,811.03 on behalf of Dr. Rich to satisfy the judgment against her;[2] $1,268,811.03 of this amount would have been paid by St. Paul Insurance had the policy acquired by Sten–Re covered liabilities incurred by physicians.

In August, 1989, AHS accepted $800,000 from Gencon in settlement of its claims arising out of the refusal of St. Paul Insurance to cover the *Barenbrugge* judgment. Now AHS and Gencon unite to bring this action for indemnity against Sten–Re and the individual defendants; AHS also submits a claim for contribution.

## DISCUSSION

■ Summary judgment is to be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment is appropriate only when, after drawing all reasonable inferences in favor of the party opposing the motion, no reasonable trier of fact could find for the nonmoving party. *Lund's, Inc. v. Chemical Bank,* 870 F.2d 840, 844 (2d Cir.1989). However, the nonmoving party cannot avoid summary judgment by resting solely on the contentions in its pleadings. Rather, if the moving party puts forth evidence on an issue, the nonmoving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e).

### I. The Indemnity Claims

■ Indemnification permits a party held legally liable to shift the entire loss to another. *Mas v. Two Bridges Associates,* 75 N.Y.2d 680, 555 N.Y.S.2d 669, 674, 554 N.E.2d 1257, 1262 (1990). It usually arises from an express agreement by which one party agrees to hold the other harmless for claims brought against it by a third party. *Knight v. H.E. Yerkes & Assoc., Inc.,* 675 F.Supp. 139, 143 (S.D.N.Y.1987). When, as in the case at bar, there is no express contractual provision for indemnification, an implied right of indemnification can still be found. Under New York law, a person is entitled to implied indemnity when he, "in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other." *Matter of Poling Transp. Corp.,* 784 F.Supp. 1045, 1048 (S.D.N.Y.1992) (quoting *McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460, 462 (1980)).

■ Interpreting New York law, the Second Circuit has identified two sets of circumstances in which a right to implied indemnification may exist. First, indemnification can be implied from the special nature of a contractual relationship between two parties; this has been called the "implied contract theory." *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.,* 782 F.2d 346, 351 (2d Cir.1986). Alternatively, indemnification can be implied when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors has paid for a loss that was primarily the responsibility of the other; this tort-based doctrine has been called "implied-in-law" indemnity. *Id.*

In *Gencon I,* defendants argued that the facts set out in the Complaint did not support a right to indemnification under the implied in law theory. Without reaching the merits of this argument, we denied their motion because they failed to make an argument concerning the implied contract theory, and the relationships of the parties were not sufficiently detailed in the Complaint to enable us to determine as a matter of law whether such theory was applicable. Defendants have now come forward with undisputed facts which reveal that the relationships of the parties were such that, as a matter of law, plaintiffs are not entitled to indemnification under either theory.

### A. Implied Contractual Indemnity

■ The implied contract theory of indemnification applies when the proposed indemnitee holds a non-delegable duty to a third party, but transfers this responsibility to the proposed indemnitor by implied agreement. *Poling,* 784 F.Supp. at 1048. Hence while

---

2. The payment was made through plaintiff AHS– Trust, a trust established by AHS in 1984.

the indemnitee is legally liable to the third party, it is entitled to indemnification from the proposed indemnitor who assumed the indemnitee's duty. No right to implied indemnification exists, however, when the proposed indemnitee retains responsibility for a duty it owes directly to the third party. *Id.*

In the instant case, the duty at issue is that of AHS and Gencon to provide medical malpractice insurance to Dr. Rich. The question is whether in utilizing the broker services of Sten–Re, AHS and Gencon wholly delegated to Sten–Re their duties to obtain this coverage so that Sten–Re must indemnify them for the *Barenbrugge* judgment. We find that, as a matter of law, they did not.

There is nothing special about the relationship between Gencon and Sten–Re that would warrant implying a contract for indemnification. Gencon summarily argues that Sten–Re assumed full responsibility for obtaining coverage for Dr. Rich. However, while Sten–Re did take on normal brokerage responsibilities, the undisputed facts show that Gencon retained responsibility for and control over the AHS hospital malpractice program as a whole and remained actively involved in the placement of the St. Paul policy at issue here.[3]

As outlined in plaintiffs' own briefs, Sten–Re was but one of several brokers contacted by Gencon to aid in obtaining excess retroactive medical coverage.[4] After Sten–Re received an initial proposal from St. Paul, Gencon sent directly to St. Paul a specimen policy that it preferred. Meanwhile, a competing broker obtained a favorable proposal from Columbia Casualty Company ("CNA"), and "[u]nfortunately for Sten–Re," Gencon initially recommended to the Committee that it accept the CNA proposal. Plaintiffs' Memorandum in Opposition at 16.

CNA's original proposal included coverage of both "incurred but not reported claims" and "adverse development of known claims." Before this policy was accepted, however, CNA dropped the adverse development portion of their proposal; Gencon thereafter contacted Sten–Re to inquire as to whether St. Paul would submit a proposal concerning adverse development claims. Sten–Re obtained such a proposal and forwarded it to Gencon. After reviewing the proposal and finding it favorable, Gencon "sent a memorandum ... to the Malpractice Advisory Committee seeking authorization to purchase the St. Paul retroactive adverse development policy." *Id.* at 17. Gencon represented that the St. Paul policy, in addition to the CNA policy, would provide the complete coverage of the original CNA proposal. On the basis of Gencon's memorandum the Committee accepted both the CNA and St. Paul proposals in April, 1982.

Thereafter, Gencon made several inquiries of Sten–Re concerning the St. Paul proposal, and requested several changes, which were effected. Both Sten–Re and Gencon received commissions for the actual placement of the St. Paul policy.[5]

None of these facts is disputed, and they clearly reveal that Sten–Re did not completely assume Gencon's duty to obtain medical coverage for Dr. Rich. On the contrary, it was Gencon, not Sten–Re, who originally forwarded the specimen policy to St. Paul; it was Gencon who reviewed the policy and

---

3. At one point Gencon appears to suggest that it delegated to Sten–Re full responsibility for negotiating a proposal with St. Paul, pointing out that Gencon had minimal contact with St. Paul. Gencon confuses which duty is at issue here. Gencon never owed to Dr. Rich or AHS the specific "duty" to negotiate with St. Paul Insurance. Rather, it owed a duty to obtain excess retroactive coverage, which it attempted to satisfy by utilizing several brokers, one of which was Sten–Re. The fact that Sten–Re may have been the only broker dealing with St. Paul is irrelevant.

4. Gencon utilized the services of at least three brokers in obtaining excess retroactive coverage:

Marsh & McLennan, Johnson & Higgins, and Sten–Re.

5. Gencon suggests that this payment was not a "commission," but rather constituted Gencon's normal administrative fee for managing AHS's hospital medical practice program. However, plaintiffs' witnesses testified in discovery that in addition to an administrative fee, Gencon received commissions for the actual placement of insurance policies. In any event, the other facts detailed above establish that Gencon did not delegate its duties to Sten–Re regardless of whether Gencon received a commission.

requested several changes; and it was Gencon who summarized the proposal and recommended it to the Committee. Moreover, Sten–Re was not the only broker, nor was St. Paul's the only proposal evaluated by Gencon in fulfilling its duty to obtain the excess coverage. In short, the relationship between Gencon and Sten–Re was simply that of an insurance agent and insurance broker; if an implied contract for indemnification were to be found here, one would have to be implied from every insurance agent-broker agreement. *Cf. Goodpasture*, 782 F.2d at 351 ("If an implied contract for indemnification were to be found here, one would have to be found in nearly every commodities sale contract that lacked a clause excluding it, a result that would reverse all standard contract and indemnity law.").

Nor is there anything special about the relationship between AHS and Sten–Re of such nature that contractual indemnification may be implied. AHS was responsible for supervising the Church hospitals and staff and obtaining appropriate malpractice insurance coverage on their behalf. AHS argues that it delegated to Gencon its duty to obtain excess retroactive coverage and Gencon in turn delegated this duty to Sten–Re. This argument must fail because, as explained *supra*, while Sten–Re agreed to assist in obtaining favorable *proposals*, it in no way assumed the full responsibility for actually obtaining coverage for the health care staff at the AHS hospitals. Hence, as a matter of law, neither Gencon nor AHS is entitled to implied contractual indemnification.

### B. Implied–In–Law Indemnity

■ This tort-based indemnification doctrine applies when there is a great disparity in the fault of two tortfeasors, and one of the tortfeasors is held liable for a loss primarily the responsibility of the other. *Goodpasture*, 782 F.2d at 351. The doctrine is designed to allocate the cost of negligence to the primary tortfeasor, and is often employed in favor of one vicariously liable for another's tort. *Poling*, 784 F.Supp. at 1049. In the instant case the issue is whether AHS and Gencon are entitled to indemnification because by satisfying the *Barenbrugge* judgment they were held vicariously liable for Sten–Re's negligence in failing to obtain an insurance policy that covered staff physicians.

With regard to Gencon, because it is a settling tortfeasor, it must show that "it may not be held responsible in any degree" to be entitled to indemnification implied in law. *Rosado v. Proctor & Schwartz, Inc.*, 66 N.Y.2d 21, 494 N.Y.S.2d 851, 854, 484 N.E.2d 1354, 1356 (1985). As explained in *Rosado*, New York General Obligations Law § 15–108 precludes a settling tortfeasor from receiving or obtaining contribution. *Id.* 494 N.Y.S.2d at 853, 484 N.E.2d at 1356. While there is no comparable statutory bar against indemnification, the settling tortfeasor who "seeks what it characterizes as indemnification" must demonstrate its complete lack of responsibility "as the statutory bar to contribution in favor of one who has settled may not be circumvented by the simple expedient of calling the claim indemnification." *Id.* at 854, 484 N.E.2d at 1357.

As explained *supra*, the undisputed facts reveal that Gencon remained actively involved in the placement of the St. Paul policy as AHS's insurance agent and retained its own responsibility to obtain retroactive coverage for staff physicians such as Dr. Rich. Indeed, the facts show that Gencon not only reviewed the St. Paul policy, but also summarized it before recommending it to the Committee, and then negotiated changes in the policy. As a matter of law, Gencon cannot show that it was not responsible in any degree for failing to make sure that the policy covered staff physicians. Rather, its liability for the *Barenbrugge* judgment was based on its own breach of duties.

■ With regard to AHS, indemnity cannot be implied if it is "at least partially at fault." *Knight*, 675 F.Supp. at 143 (quoting *Hanley v. Fox*, 97 A.D.2d 606, 468 N.Y.S.2d 193, 194 (1983)); *see Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 709 (S.D.N.Y. 1984). The facts reveal that AHS's liability was not vicarious but rather, like Gencon's, was the result of its own breach of duty to Dr. Rich. The Committee reviewed and ultimately approved the St. Paul policy; in failing to obtain the excess coverage for staff physicians such as Dr. Rich, it breached its

own duty and hence was held liable for the *Barenbrugge* judgment.

In sum, we agree with defendants that plaintiffs' claims are essentially for broker malpractice and/or breach of contract and cannot be disguised as causes of action for indemnification.[6] There is no genuine issue of material fact in dispute, and there is no basis for implying indemnification under New York law for Gencon or AHS; thus summary judgment is granted in favor of defendants on these claims.

## II. AHS's Contribution Claim

New York law does not permit a party to seek contribution when the underlying liability is for breach of contract. *Board of Educ. v. Sargent, Webster, Crenshaw & Folley*, 71 N.Y.2d 21, 523 N.Y.S.2d 475, 517 N.E.2d 1360 (1987). In *Gencon I*, we did not dismiss AHS's claim for contribution because it was unclear from the Complaint whether AHS's liability to Dr. Rich was based on breach of contract. The undisputed facts now reveal, and AHS concedes, that it was indeed based on Hinsdale Hospital's contractual obligation to Dr. Rich. AHS argues, however, that its contribution claim should not be dismissed because its liability to Dr. Rich could have been based on a duty independent of the contract. AHS relies on *Sommer v. Federal Signal Corporation*, 79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992), which upheld a contribution claim where the underlying cause of action was one where the parties' relationship was initially formed by contract, but there was a claim that the contract was performed negligently. AHS contends that if it had not paid the *Barenbrugge* judgment, Dr. Rich could have sued it for negligence in addition to breach of contract because at the time of the judgment the primary policies were not exhausted and yet AHS appealed the verdict without consulting Dr. Rich; by the time the appeals were completed, the policies were exhausted. AHS's reliance on *Sommer* is misplaced.

*Sommer* involved a fire alarm company's breach of contract which resulted in a small

fire's spreading out of control. 583 N.Y.S.2d at 959, 593 N.E.2d at 1367. The Court of Appeals held that these facts could give rise to tort liability separate from the contract, which liability would support a contribution claim. The Court explained that the nature of the alarm company's services imposed a duty to act with reasonable care:

> Fire alarm companies [ ] perform a service affected with a significant public interest; failure to perform the service carefully and competently can have catastrophic consequences. The nature of Holmes' services and its relationship with its customer therefore gives rise to a duty of reasonable care that is independent of Holmes' contractual obligations.

*Id.* at 962, 593 N.E.2d at 1370. Such a duty is imposed by public policy rather than by the contract between the parties. *Id.* at 961, 593 N.E.2d at 1369.

By contrast, the instant case involves a contract to provide malpractice insurance. Failure of AHS to provide such insurance would not have resulted in "catastrophic consequences" such that public policy requires the imposition of a duty independent of the contract. Rather, if AHS had refused to pay the *Barenbrugge* judgment, Dr. Rich simply would have sued AHS to seek the benefit of her contractual bargain. "[M]erely alleging that the breach of contract duty arose from a lack of due care will not transform a simple breach of contract into a tort." *Id.* at 961, 593 N.E.2d at 1369 (citations omitted).

Because AHS's liability to Dr. Rich was based on breach of contract, and there is no independent duty creating a basis for contribution, AHS cannot, as a matter of law, seek contribution from Sten–Re.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on all claims is granted.

SO ORDERED.

Plaintiffs move for reconsideration of this Court's Opinion and Order of July 22, 1994

---

**6.** As noted in *Gencon I*, plaintiffs cannot assert a claim for breach of contract because New York's six-year statute of limitations for such actions has expired.

granting summary judgment in favor of defendants. Plaintiffs contend that "the Court misapprehended the duties and responsibilities delegated amongst the parties, and misunderstood the undisputed events which took place." The motion is granted to the extent that the decision has been reconsidered but is reaffirmed.

Plaintiffs argue that we erred in granting summary judgment against AHS on its claim for implied indemnity because, contrary to the Court's finding, AHS never reviewed the St. Paul insurance policy. Rather, AHS merely reviewed the memorandum prepared by Gencon which outlined St. Paul's proposal—not the policy itself.

■■■ As explained in our prior Opinion, there are two sets of circumstances in which a right to implied indemnification may exist: the "implied contract theory" and the "implied-in-law" theory. With respect to the implied contract theory, AHS argued that an implied contract was formed with Sten–Re because AHS delegated its duties to Gencon, and Gencon in turn delegated its duties to Sten–Re. Because we found that Gencon did not fully delegate its duties to Sten–Re, we granted summary judgment against both Gencon and AHS. Whether AHS reviewed the St. Paul insurance policy is immaterial to this holding.[1]

Similarly, whether AHS reviewed the St. Paul policy is immaterial to our finding that AHS is not entitled to implied-in-law indemnification. In our prior Opinion we stated at page 988:

With regard to AHS, indemnity cannot be implied if it is "at least partially at fault." *Knight*, 675 F.Supp. at·143 (quoting *Hanley v. Fox*, 97 A.D.2d 606, 468 N.Y.S.2d 193, 194 (1983)); (*see Jordan v. Madison Leasing Co.*, 596 F.Supp. 707, 709 (S.D.N.Y.1984)). The facts reveal that AHS's liability was not vicarious but rather, like Gencon's, was the result of its own breach of duty to Dr. Rich. The Committee reviewed and ultimately approved the

St. Paul policy; in failing to obtain the excess coverage for staff physicians such as Dr. Rich, it breached its own duty and hence was held liable for the *Barenbrugge* judgment.

Plaintiffs contend that this language represents a finding by the Court that AHS *tortiously* breached a duty to Dr. Rich, and that this finding is not only factually in error because AHS did not review the policy, but it is contrary to the Court's subsequent holding that AHS is not entitled to contribution because its liability to Dr. Rich was based on breach of contract—not tort. While our language was perhaps misleading, plaintiffs' interpretation is mistaken.

To clarify, AHS's liability to Dr. Rich was based on its contractual obligation to provide insurance coverage to Dr. Rich. Its liability was not based on the alleged breach of any duty other than that created by contract. As previously stated by this Court, "if AHS had refused to pay the *Barenbrugge* judgment, Dr. Rich simply would have sued AHS to seek the benefit of her contractual bargain." Opinion at 989. This is the reason AHS is not entitled to contribution, and it is also the reason AHS is not entitled to indemnification. As explained in *Knight v. H.E. Yerkes & Assoc., Inc.*, 675 F.Supp. 139, 143 (S.D.N.Y.1987), the implied-in-law theory of indemnification, which applies to joint *tortfeasors*, does not apply if the underlying liability is based on contract rather than tort:

In a case of implied indemnity, however, 'where the party seeking indemnification is himself at least partially at fault, indemnity will not be implied.' Because the underlying action sounds in contract, not in tort, there is no possible set of facts on which it can be true that [third-party plaintiff] was not at least partially responsible for harm, for it was [third-party plaintiff] that allegedly breached the contract, not [third-party defendant]. There can therefore be no cause of action in indemnity. (citations omitted)

---

1. To the extent that plaintiffs reargue that Gencon did fully delegate its duties to Sten–Re, we reject these contentions for reasons explained in our prior Opinion. In addition, we reject plaintiffs' suggestion that the fact that Gencon's recommendation to AHS concerned St. Paul's policy *proposal* rather than its actual policy is material to our determination that Gencon did not fully delegate its duties to Sten–Re.

Hence regardless of whether AHS reviewed the actual St. Paul policy or the memorandum prepared by Gencon, it cannot obtain indemnification from Sten–Re because the basis for its liability for the *Barenbrugge* judgment was its contractual duty to Dr. Rich.

The Court therefore reaffirms its Opinion and Order dated July 22, 1994.

**SO ORDERED.**